F. T. HURNER v. MUTUAL BANKERS CORPORATION.

191 So. 831
Division B
Opinion Filed November 3, 1939
Rehearing Denied November 23, 1939

436

*Hampton, Bull & Crom,* for Plaintiff in Error;

*Phillips & Thompson* and *J. Tweed McMullen,* for Defendant in Error.

BROWN, J.—The plaintiff corporation filed its declaration on a promissory note under seal, alleging the giving of the note, the failure to pay the note at maturity, the crediting of the defendant with the proceeds of the sale of certain collateral security deposited with the plaintiff and sold by

them, the promise (incorporated in the face of the note) to pay 10 per cent of the principal of the note as an attorney's fee should the note have to be placed in the hands of an attorney for collection.

To this declaration the defendant filed two pleas. .

The first plea set out the complete history of the transaction out of which the note arose. Namely, the purchase by the defendant of certain stock in the plaintiff corporation, a part of the purchase price being in cash and the balance being evidenced by a promissory note made in February of 1930. The note sued on was alleged to be a renewal note made in January of 1931, a part of the principal of the original note having been paid. This plea alleged that the plaintiff, a New Jersey corporation, was not licensed or qualified to transact business in Florida, and that therefore there was a failure of consideration.

The second plea set out the transaction above mentioned and alleged that the execution of the original note was procured or induced by fraudulent misrepresentations made by the agent of the plaintiff as to the ownership by the plaintiff of the controlling stock in a prosperous local corporation, Mutual Finance Company, when in fact the plaintiff did not own such stock.

A demurrer to both of these pleas was sustained.

Defendant filed an amended second plea alleging, in addition to the allegations already set out, that the same fraudulent misrepresentations were repeated at the time of the giving of the renewal note—approximately one year after the first note was made.

A motion for compulsory amendment to this plea was sustained.

Defendant then filed another second amended plea containing all the allegations previously included in both of the pleas addressed to the fraudulent misrepresentations.

A demurrer to this plea was sustained by the court.

Defendant failed to plead further and judgment by default was entered; proof of damages was submitted to a jury, and verdict returned and final judgment thereon rendered. A motion in arrest of the final judgment was denied.

Defendant took writ of error, assigning as errors seven grounds, namely, the various rulings of the court on the demurrers, motions, etc., and the entry of the default and final judgments.

The important question here presented is: May the maker of a renewal note interpose the defense of fraud against the payee of the note where there were fraudulent misrepresentations in procuring the original note, the same fraud being reiterated at the time of the giving of the renewal note; where the maker has had ample time to discover such fraud, by the exercise of ordinary diligence, prior to the giving of the renewal note.

This Court has previously held in Padgett v. Lewis, 54 Fla. 177, 45 Sou. Rep. 29, that: " 'One who gives a note in renewal of another note, with knowledge at the time of a partial failure of the consideration for the original note, or false representations by the payee, etc., waives such defense, and cannot set it up to defeat a recovery on the renewal note." 7 Cyc. 881 * * *."

Further, in Franklin Phosphate Co. v. International Harv. Co. of America, 62 Fla. 185, 57 Sou. Rep. 206, we said:

" 'One who gives a note in renewal of another note, with knowledge at the time of a partial failure of the consideration for the original note, or false representations by the payee, etc., waives such defense, and cannot set it up to defeat a recovery on the renewal note. And where one giving such renewal note either had knowledge of such facts

and circumstances, or by the exercise of ordinary diligence could have discovered them and ascertained his rights, it became the duty to make such inquiry and investigation before executing the renewal note, and if he fails so to do he is as much bound as if he had actual knowledge thereof.' "

This rule has been consistently followed in this Court. See Roess Lumber Co. v. State Exchange Bank, 68 Fla. 324, 67 So. 188; Treadwell v. Exchange National Bank of Tampa, 127 Fla. 40, 172 Sou. Rep. 914; Vining v. Pierson, 101 Fla. 133, 133 Sou. Rep. 346; Storrs v. Storrs, 130 Fla. 711, 178 Sou. Rep. 841.

And further, in the case of Hyer, et al., v. York Manufacturing Co., 58 Fla. 283, 50 Sou. Rep. 485, it was said:

"The defendants below had every opportunity, before the execution of the renewal note sued on, by the exercise of ordinary diligence, to discover whether they had any claim for damages on account of the failure to ship the machinery according to contract. Such a defense was waived by the execution of the renewal note. This question is settled by this Court in the case of Padgett v. Lewis, 54 Fla. 177, 45 Sou. Rep. 29."

It is readily seen from a careful perusal of these decisions that the maker of a note waives the defense of fraud or false misrepresentations where he gives a renewal note with knowledge of the fraud or when by the exercise of ordinary diligence he could have discovered the fraud. The principle of law is sound and is adopted through necessity. The difficulty, sometimes, comes in the application of the principle. The question of reasonable or ordinary diligence is often one of fact; being dependent upon the length of the interval of time between the giving of the original and renewal notes, and, also upon the ease or difficulty with

which the maker could have discovered the fraud. In the case of Padgett v. Lewis, *supra*, this Court there implied that six and one-half months was ample time for the maker to have discovered the fraud. Each case, however, is dependent upon its own circumstances. In the instant case, the time of approximately one year seems to us to be abundantly sufficient and that with little trouble to himself the maker of the note could have ascertained the alleged fraud. There seems to be no question but that this defense would have been unavailable to the maker of the renewal note had this been just a case of fraud in the inception and nothing more.

Here, however, the defendant sets up the reiteration of the fraud at the time of making the renewal note. There was no allegation of new or additional fraud, but it is alleged that the agent of the plaintiff corporation did repeat the fraudulent misrepresentations when the renewal note was given.

It seems to us that there is no difference in the case of a waiver of the defense of fraud by the giving of a renewal note where there had been ample time and opportunity to discover the fraud beforehand and in the case where the fraud perpetrated in the first instance is simply restated at the time the renewal note was given, where there had been likewise sufficient time and opportunity for the maker to have uncovered the truth or falsity of the representations of the agent of the payee. There is no difference in principle. There is no new fraud, and, can it be said that the repetition of the misrepresentations of the agent of the payee will revert back and cure the mistake of the maker in not ascertaining the fraud? That is, will such restatement of the fraud relieve the maker of the duty imposed upon him to find out about the fraud? We cannot see how such acts of the agent of the payee of this note can be made to so

operate. Had there been new or additional misrepresentations this clearly would not be the rule; but where there is no such new fraud, the simple reiteration of the previous fraudulent representation will not act or operate as a cure for the waiver by delay and failure to use reasonable diligence on the part of the defendant. The fraud here complained of by the maker of the note is only such fraud as he is already presumed to have known about, or that by the exercise of ordinary diligence he might have known about, and in either case he is presumed to have the knowledge of the fraud. The maker herein had had ample time to find out about the representations of the payee through its agent. The means surely have not been so difficult as to relieve the maker of the responsibility or duty to find out about the fraud.

As already shown, the burden of exercising ordinary diligence to discover the fraud rests upon the maker of the renewal note before he executed the same. That is, if the time be adequate and the opportunity to make inquiry and discovery be reasonable. Here, we have a plea which did not rebut the existence of these two essential elements. The plea shows that the Mutual Finance Company was a local corporation. Yet it does not allege that defendant inquired of that company whether the plaintiff corporation owned the controlling stock therein, although apparently from the plea the defendant had ample time and opportunity to ascertain this fact before he executed the renewal note. Certainly the plea does not deny that defendant did have both the time and the opportunity to make this simple inquiry. For the above reasons we hold that the plaintiff in error waived his defense of fraud by the giving of the renewal note under the circumstances set out herein and the lower court was correct in sustaining the demurrers to the plea setting up such defense.

The sustaining of the motion for compulsory amendment became harmless in view of the subsequent filing of the amended plea filed setting out substantially the same defense, demurrer to which was, as we have above held, properly sustained.

It is further contended by counsel for the plaintiff in error that there was error in the amount of attorney's fees ($240.00), which the court instructed the jury to include in their verdict. It is claimed that the allowance for attorneys' fees should have been 10 per cent based on the balance due on the principal of the note, which was $925.00. The accrued interest, for which judgment was allowed was $1,011.05. The note provided for an attorney's fee of 10 per cent "of the principal hereof," which principal was $2,425.00.

In answer to this contention it is argued that there is no adequate basis in the record for this Court to disturb the judgment of the court below in this regard. No objection was made when the court instructed the jury on this point.

In this case the record does not affirmatively show that the fifteen hundred dollars credit given on the note was made prior to the turning of the note over to counsel for collection. The declaration recites the credit of $1,500.00, and sues for the balance due on the principal, $925.00, and the interest thereon, and the attorney's fees provided for in the note, alleging that the defendant promised to pay 10 per cent of the principal of the note as attorneys' fees, if not paid at maturity and the note was placed in the hands of an attorney for collection, and contains sufficient allegations of the obligation incurred by the plaintiff in securing the assistance of counsel to collect this note. The judgment was by default, and before entering final judgment, damages were proved to a jury and their verdict contained the sum

of $240.00 as attorney's fees, which was included in the final judgment. The defendant did not make any objection to this feature of the verdict and judgment at the time but later raised the question by motion in arrest of judgment, which motion was denied. From the above facts and circumstances portrayed by the record, reversible error on the part of the court below in the allowance of attorneys' fees is not affirmatively made to appear.

The other assignments have also been considered and we find no reversible error.

For the above and foregoing reasons we are of the opinion that the judgment of the lower court should be and the same is hereby affirmed.

Affirmed.

WHITFIELD, P. J., and CHAPMAN, J., concur.

BUFORD, J., concurs in opinion and judgment.

Justices TERRELL and THOMAS not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.